LOBRANO, Judge.
Defendant, New Orleans Cold Storage and Warehouse Company[1], appeals the dismissal of its third party claim against Mellon Bank International, on a motion for summary judgment.
The undisputed facts of this case are as follows: Plaintiff, Columbus Line, is the owner of the container ships, M/V Columbus New Zealand and M/V Columbus America. Plaintiffs, R & W Hellaby, Inc. and Wesfarmers Export, each contracted with Columbus Line for the shipment of frozen beef to New Orleans from New Zealand and Australia respectively. Upon receipt of the containers of beef, Columbus Line issued bills of lading to Hellaby and Wesfarmers for each container shipped by these parties.
While the containers were in transit, the bills of lading and other documentation regarding the shipments were forwarded to *907 Mellon Bank International, the collecting bank for Hellaby and Wesfarmers on documentary drafts which included the bills of lading covering the cargo at issue. Mellon Bank was also a creditor of John Thallon and Company, the importer who ordered the frozen beef.
Mellon Bank retained the original bills of lading but, at Thallon’s request, forwarded copies of these to Thallon, along with invoices and other documentation including original certificates which showed that the beef being transported had been inspected and approved by governmental agencies in New Zealand and Australia. Thallon sent the copies of the bills of lading and other documentation including the original inspection certificates to its customs broker, defendant NOCS International, Ltd., a subsidiary of defendant New Orleans Cold Storage and Warehouse Company, Thal-lon’s warehouser. In a form letter sent with these documents, Thallon specified that only copies of the bills of lading were attached and that the originals would follow. NOCS International received these documents and delivered them to plaintiff, Biehl and Company, Inc., Columbus Line’s New Orleans steamship agent, on April 15, 1985 so that customs clearances could be obtained.
The frozen beef shipped by Hellaby on the M/V Columbus New Zealand arrived in New Orleans on April 20, 1985. The beef shipped by Wesfarmers on the M/V Columbus America arrived in New Orleans on May 3, 1985. Biehl sent arrival notices to Thallon and a copy of the ship’s manifest for the M/V Columbus New Zealand and M/V Columbus America to NOCS International. The cargo aboard the M/V Columbus New Zealand was delivered to NOCS’ warehouse for stripping and unloading on April 25, 1985. The cargo aboard the M/V Columbus America was delivered to NOCS’ warehouse for this same purpose on May 9, 1985. As of May 20,1985, all of the frozen beef at issue had been delivered to Thal-lon’s customers by New Orleans Cold Storage and Warehouse Company (“NOCS”) and NOCS International, Ltd. (“NOCSI”) even though Mellon Bank continued to hold the original bills of lading.
Mellon was advised on May 24, 1985 that Thallon was going to liquidate and by June of 1985, Thallon was in bankruptcy proceedings. The original bills of lading were subsequently returned unpaid by Mellon to Hellaby and Wesfarmers. Mellon did not learn that the beef had already been delivered to Thallon’s customers until June 12, 1985. Plaintiffs, Hellaby, Wesfarmers, Biehl and Columbus Line then filed suit against NOCS and NOCSI for negligent misdeliveries, negligent misrepresentations and breaches of duty claiming the defendants’ actions caused them to sustain losses in the amount of $228,960.00. NOCS and NOCSI filed a reconventional demand against Biehl and Company claiming that Biehl should have insisted upon presentation of the original bills of lading before releasing the shipments to the warehouse for delivery to Thallon’s customers.
NOCS and NOCSI also filed a third party demand against Mellon Bank International alleging that it was negligent in releasing the original meat inspection certificates before receiving payment for the bills of lading which it still had in its possession. NOCS and NOCSI claim that in releasing the meat certificates, Mellon created the probability that the meat would be put into commerce without the original bills of lading being surrendered.
The third party demand was subsequently amended to include the allegation that Mellon breached its fiduciary duty to Hella-by and Wesfarmers. Specifically, NOCS and NOCSI contend that while acting as collection agent for Hellaby and Wesfarm-ers, Mellon was also a creditor of Thallon and was aware of Thallon’s deteriorating financial condition. According to NOCS and NOCSI, Mellon was instructed by Hel-laby and Wesfarmers to notify them in the event of non-payment or non-acceptance of the bills of lading. They claim that Mellon should have informed Hellaby and Wes-farmers of Thallon’s weak financial situation so that delivery of the shipments to Thallon’s customers could have been stopped. In addition, NOCS and NOCSI allege that Mellon received payments related to the beef shipments but applied those *908 payments to Thallon’s other indebtedness with Mellon rather than using those funds to pay the bills of lading.
On the basis of these allegations, NOCS and NOCSI claim to be entitled to indemnity and/or contribution from Mellon.
Motions for summary judgment were filed by plaintiffs against NOCSI and by both defendants against plaintiffs. Both motions were denied by the trial judge. Mellon filed a motion for summary judgment against defendants/third party plaintiffs. The trial judge granted this motion and dismissed the third party demand against Mellon. NOCS brought this appeal asserting that genuine issues of material fact exist which can only be resolved by a trial on the merits. We disagree. In our opinion there are no issues of fact to be resolved, only an issue of law. Given the undisputed facts, did Mellon breach its statutory duty of seasonable notification and/or its fiduciary duty as collecting bank.
Appellant argues that Mellon was negligent in its failure to “seasonably” notify the shippers (Hellaby and Wesfarmers) of non-payment of the bills of lading. Although appellant cites Uniform Commercial Code Article 4, Section 202(1)[2] to support its reasonable notification argument, that article does not apply to documentary drafts. The applicable article is UCC Article 4, Section 501 which requires seasonable notice of dishonor of a documentary draft. What constitutes a seasonable time, absent an agreed to time limit, is a reasonable time. UCC 1-204(3). A reasonable time “depends on the nature, purpose and circumstances” of the action to be taken. UCC 1-204(2).
Appellant produced a copy of a Mellon Bank interoffice memorandum regarding the Thallon account dated March 28, 1985 in which Thallon’s deteriorating financial condition was discussed. It is appellant’s assertion that Mellon knew that Thallon would not be able to pay the amounts due on the bills of lading and by not notifying the shippers of this information they breached their duty of reasonable notification.
It is undisputed that Mellon knew Thal-lon was in financial trouble during the time that it was holding the original bills of lading for collection. However, Mellon’s knowledge was not sufficient to trigger its statutory obligation to notify the shippers or their agent of dishonor of the bills of lading. Appellant has neither alleged nor offered any documentary evidence to show that Mellon at any time, was ever specifically informed by Thallon that it was not going to honor the drafts in satisfaction of the bills of lading. In the absence of any notification by Thallon, no duty existed on Mellon’s part to reveal to the shippers information regarding Thallon’s financial status. Furthermore, Mellon had no duty to advise that there was a “possibility” that the drafts would be dishonored. Speculation does not trigger any obligations by the collecting bank.
In a companion case arising out of other shipments to Thallon during this same period, the United States Fifth Circuit Court of Appeals found that Mellon had acted reasonably by properly retaining the original negotiable bills of lading while attempting to collect payment from Thallon. Interocean S.S. Corp. v. New Orleans Cold Storage and Warehouse, 865 F.2d 699 (5th Cir.1989). Although Thallon was delinquent in its payments in that case as well as in the instant case, the court in Interoce-an found no fault on Mellon’s part in not notifying the shipper of this fact. Id. at 705.
Appellant also argues that Mellon breached its duty to the shippers in failing to disclose that it was Thallon’s creditor at the same time it was acting as collecting bank on the shippers’ documentary drafts. This argument is without merit. A collecting bank owes no duty to notify the party for whom it is collecting that it is also a creditor of the drawee unless suppression *909 of that fact amounts to bad faith. Interocean S.S. Corp. v. New Orleans Cold Storage and Warehouse Co., supra.
Appellant argues that Mellon knew it had a “conflict of interest” and breached its duty to the shippers by applying funds received from Thallon to Thallon’s debt with the bank instead of paying the documentary drafts, even though the funds may have derived from the sale of beef to Thallon’s customers. We disagree. As the court noted in the Interocean case, as long as Mellon retained possession of the original bills of lading, it had no reason to believe that Thallon’s payment on its debt to the bank derived from the sale of the beef.
The issuer of a bill of lading is responsible for releasing cargo only to the party which presents the original bill of lading. Allied Chemical International Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F.2d 476 (2nd Cir.1985), cert. denied, 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 903 (1986). Although it was alleged that Biehl, NOCS and NOCSI had developed a practice whereby frozen cargo would be released by a ship through its agent without the receipt of the original bills of lading, it is undisputed that Mellon did not learn until June 12, 1985 that the cargo had been released without payment. Until the time of Thallon’s bankruptcy, Mellon held the original bills of lading and attempted to collect payment for them as it was required to do. There was no bad faith on Mellon’s part, nor breach of duty.
Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of Mellon.
AFFIRMED.

. Although the brief filed on behalf of New Orleans Cold Storage and Warehouse Company states that it was also filed on behalf of defendant New Orleans Cold Storage International, Ltd., only New Orleans Cold Storage and Warehouse Company appealed the judgment of the trial court.

. The sections of the UCC we refer to have been adopted by Louisiana and appear in Title 10 of the revised statutes.